UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNA JUDITH SUAREZ OTERO,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, et al.,<br><br>Respondents. | No. 1:25-cv-1790 CSK<br><br><br><br>ORDER |

Petitioner, an asylum seeker from Nicaragua who entered the United States on February 14, 2022, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241.[1] Petitioner was initially detained by immigration officials and released on parole on February 14, 2022. Subsequently, Petitioner was released on her own recognizance on April 8, 2022 pursuant to 8 U.S.C. § 1226. Petitioner lived in the United States for over 3.5 years until September 10, 2025, when petitioner reported to U.S. Immigration and Customs Enforcement ("ICE") in San Francisco for her required check-in and was detained. This habeas action concerns petitioner's re-detention. Pending before the Court is petitioner's motion for a preliminary injunction seeking petitioner's immediate release.

///

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 9.)

1

I.     PROCEDURAL BACKGROUND & CONVERSION TO A MOTION FOR PRELIMINARY INJUNCTION

On December 9, 2025, petitioner filed the petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging petitioner's detention and seeking, as relevant here, an order granting the petition for writ of habeas corpus and ordering petitioner's immediate release, and permanently enjoining the government from re-detaining petitioner absent written notice and a hearing prior to re-detention where respondents must prove by clear and convincing evidence that she is a flight risk or danger to the community, and that no alternative to detention would mitigate those risks.  Hab. Pet. at 13.  Petitioner simultaneously filed a motion for temporary restraining order with supporting declarations and exhibits.  Pet'r Mot. (ECF No. 2); Martha Maritza Otero Jaime Decl., Ex. 2 (ECF No. 2-2).[2]  Petitioner seeks an order granting the motion and ordering petitioner's immediate release.  Id. at 15.

On December 10, 2025, the district court issued a briefing schedule on the motion for temporary restraining order, to be heard on the papers absent further court order.  12/10/2025 Min. Order (ECF No. 6).

The parties consented to the jurisdiction of a U.S. Magistrate Judge, and on December 11, 2025, this case was reassigned to the undersigned.  That same day, this Court issued a revised briefing schedule, and ordered respondents not to transfer petitioner out of this judicial district pending further order of the court.  12/11/2025 Min. Order (ECF No. 10).  In setting the briefing schedule, this Court ordered the parties to indicate whether they were amenable to converting the motion for temporary restraining order to a motion for preliminary injunction.  Id.  Petitioner and Respondents have confirmed they are amenable to converting the motion for temporary restraining order to a motion for preliminary injunction without further briefing.  Pet'r Reply at 1 n.1 (ECF No. 13); Resp't Stmt at 1 (ECF No. 14 at 1).

On December 16, 2025, respondents filed an opposition to the motion for temporary

---

[2] The government does not contest the authenticity of the various immigration documents attached as exhibits to the Jaime Declaration, and itself cites to the Jaime Declaration and attached exhibits.  See Resp't Opp'n; Resp't Supp. Opp'n.

restraining order.  Resp't Opp'n (ECF No. 11).  No exhibits were provided.  Id.  On December 17, 2025, petitioner filed a reply.  Pet'r Reply.  To ensure that the Court had a complete record for its determination of the issues presented in the pending motion, the Court ordered the government to submit all supporting documents referenced in or related to its opposition, including copies of all orders of release and detention.  12/18/2025 Minute Order (ECF No. 15).  In response to the Court's order, respondents submitted documents and submitted a supplemental opposition.  Resp't Supp. Opp'n (ECF No. 16).  Petitioner was provided with the opportunity to file an optional surreply, but did not file a surreply.  See Docket.  Briefing closed on December 19, 2025.

Because the standard for issuing a temporary restraining order and preliminary injunction is the same, see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001), respondents had notice and opportunity to respond in opposition, and petitioner and respondents agreed to conversion of the motion, petitioner's motion for a temporary restraining order is converted to a motion for preliminary injunction.

Pursuant to Local Rule 230(g), petitioner's motion for a preliminary injunction is submitted for decision on the record and written briefing.  L.R. 230(g).

II.   FACTUAL BACKGROUND

Petitioner is a native of Nicaragua.  Pet'r Ex. 1 at 2 (ECF No. 2-2 at 8).  Petitioner fled Nicaragua to escape persecution by the Nicaraguan government due to petitioner's political opinion based on her student activism and membership in a particular social group, as well as persecution by her father, who abused her throughout her childhood and adult life and tried to kill her mother on several occasions.  Decl. of Martha Maritzka Otero Jaime (hereafter "Jaime") (petitioner's mother), Ex. 6 Asylum Application (ECF No. 2-2 at 25-35).

Petitioner arrived in the United States on February 14, 2022.  Pet'r Mot. at 3; Jaime Decl. ¶ 1.  Petitioner sought admission by using an application created by DHS, known as CBP1 or "Customs and Border Protection One."  Pet'r Mot. at 3; Jaime Decl. ¶ 1.  By using CBP1, petitioner was scheduled to be seen on the same day she arrived in the United States, and after presenting herself to immigration authorities, she was detained for a few hours.  Pet'r Mot. at 3; Jaime Decl. ¶¶ 1-2.  After being interviewed, DHS officers determined petitioner was a low flight

3

risk and not a danger to the community, and petitioner was paroled and released into the United States on that same day, February 14, 2022. Pet'r Mot. at 3-4; Jaime Decl. ¶ 2; Resp't Opp'n at 2; Resp't Supp. Opp'n at 2. It appears that petitioner was paroled into the United States due to her medical conditions. See Resp't Supp. Opp'n, Ex. B at 2 (ECF No. 16 at 9) (disposition at 2/14/2022 entry: Subject was "paroled into the United States … due to underlaying medical conditions"). Petitioner was issued a Notice to Appear on February 14, 2022 for "removal proceedings under Section 240 of the Immigration and Nationality Act." See Jaime Decl., Ex. 4 (ECF No. 2-2 at 18-20).

On April 8, 2022, petitioner appeared as ordered and ICE issued an Order of Release on Recognizance for petitioner "[i]n accordance with section 236 of the Immigration and Nationality Act",[3] and petitioner was released on her own recognizance on conditions set forth on ICE Form I-220A. Resp't Supp. Opp'n, Ex. A at 1 (ECF No. 16 at 5).

Over the next three years and almost seven months, Petitioner lived with her mother in San Francisco and reported to ICE without incident at least six times, including on April 8, 2022, January 6, 2023, September 8, 2023, September 15, 2023, September 11, 2024, and September 10, 2025. Id., Ex. A at 2.

On February 9, 2023, petitioner signed her application for asylum and for withholding of removal (form I-589), and DHS confirmed receipt on February 27, 2023. Jaime Decl., Ex. 6 (ECF No. 2-2 at 25-35).

On September 10, 2025, petitioner reported for her annual in-person check-in at the ICE San Francisco office. Pet'r TRO Mot. At her check-in, ICE promptly detained petitioner without providing an explanation for her detention and refused to answer petitioner's questions. Pet'r TRO Mot.; see Resp't Supp. Opp'n, Ex. B at 4 (ECF No. 16 at 11) & Ex. C (ECF No. 16 at 15). Respondents do not allege that petitioner violated any conditions of her release. See Resp't Opp'n; Resp't Supp. Opp'n, Ex. A at 1 (Order of Release on Recognizance does not have the box checked for failure to comply with conditions of release). An order to detain petitioner dated

---

[3] The Immigration and Nationality Act ("INA") section 236 is codified at 8 U.S.C. § 1226.

4

1    September 10, 2025 does not provide the reason for the detention. See Resp't Supp. Opp'n, Ex.
2    C (ECF No. 16 at 15). An arrest warrant dated September 10, 2025 issued based on "the
3    pendency of ongoing removal proceedings" against petitioner. Id., Ex. D (ECF No. 16 at 17).
4          On September 18, 2025, DHS issued a Notice and Order of Expedited Removal, stating
5    petitioner was inadmissible under INA Section 235(b)(1), 8 U.S.C. § 1225(b)(1) and ordered
6    removed from the United States. Jaime Decl., Ex. 11 (ECF No. 2-2 at 50). Petitioner was
7    charged with being subject to removal for not having a valid entry or travel document at the time
8    of application for admission pursuant to Section 212(a)(7)(A)(i)(I) of the INA (8 U.S.C.
9    § 1182(a)(7)(A)(i)(I)). Id., Ex. 11.
10         On October 15, 2025, an Asylum Officer conducted a credible fear interview of petitioner
11   and determined that petitioner established a credible fear of persecution where she was beaten by
12   a group of five people for her political views, it took almost a month to recover from her injuries
13   from the assault, and she received a death threat. Jaime Decl., Ex. 12 (ECF No. 2-2 at 53, 101-
14   102). The Asylum Officer concluded that there is a significant possibility that petitioner can
15   establish past persecution on the basis of political opinion. Id. (ECF No. 2-2 at 101).
16         On October 21, 2025, DHS issued a Notice to Appear (DHS form I-862), placing
17   petitioner in "removal proceedings under Section 240 of the Immigration and Nationality Act" on
18   November 12, 2025. Id., Ex. 13 (ECF No. 2-2 at 104-105). This Notice to Appear vacated the
19   September 18, 2025 Order of Expedited Removal. Id. ("Section 235(b)(1) order was vacated").
20         Petitioner sought a custody redetermination pursuant to 8 C.F.R. § 1236. Id., Ex. 15 (ECF
21   No. 2-2 at 112). On November 12, 2025, an immigration judge denied the custody
22   redetermination because petitioner "is charged as an arriving alien. See Matter of Oseiwusu, 22
23   I&N Dec. 19 (BIA 1998)." Id. Petitioner reserved her right to appeal. Id. (ECF No. 2-2 at 113).
24         Petitioner is currently detained at the California City Detention Center. Pet'r Mot. at 5;
25   Jaime Decl. at ¶ 6.
26   III.    LEGAL STANDARDS
27         "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter
28   v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). To qualify for injunctive relief, plaintiff

must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that she will suffer irreparable harm without an injunction; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest. Id. at 20. A deficiency in any element precludes relief. Id. at 23. "[I]f a plaintiff can only show that there are serious questions going to the merits -- a lesser showing than likelihood of success on the merits -- then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

IV.   DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner contends that respondents denied petitioner her due process rights by denying her any notice and hearing, before her arrest and re-detention, despite her release under 8 U.S.C. § 1226 (also referred to as INA § 236), and by choosing to revoke petitioner's parole in an arbitrary manner, without a rational and individualized determination of whether petitioner was a safety or flight risk. Pet'r Mot. at 2-3. Respondents do not argue that petitioner is a flight risk or a danger to the community, or that she violated any condition of her release. Instead, they argue that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A). Resp't Opp'n at 6 ("In sum, Petitioner's detention is proper under § 1225(b)(2)(A)). Respondents separately argue that petitioner is currently being detained pursuant to § 1225(b)(1) based on the September 18, 2025 expedited removal order. Resp't Opp'n at 5 (ECF No. 11 at 5) (citing September 18, 2025 expedited removal order).

   A.   Likelihood of Success on the Merits

The Court finds petitioner has established a likelihood of success on the merits of her due process challenges to her detention.

   *1.   Applicability of 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)*

The issue here is whether petitioner, who has no criminal record, attends school, has a

6

part-time job, volunteers at nonprofit organizations, and has lived in the United States since February 2022, is subject to discretionary release, as petitioner argues, or whether petitioner is subject to mandatory detention under § 1225, as argued by respondents.

The Court concludes that § 1226 applies to petitioner. There are multiple problems with Respondents' arguments. The Court first addresses respondents' argument that petitioner is currently being detained pursuant to 8 U.S.C. § 1225(b)(1) based on the September 18, 2025 expedited removal order issued pursuant to § 1225(b)(1), which is Section 235(b)(1) of the INA. Resp't Opp'n at 5 (citing September 18, 2025 expedited removal order at ECF No. 2-2 at 50). This is incorrect based on the government's own actions and documents. On October 21, 2025, the government vacated the September 18, 2025 Order of Expedited Removal, placing petitioner in standard removal proceedings under Section 240 of the INA. Jaime Decl., Ex. 13 (ECF No. 2-2 at 104) ("Section 235(b)(1) order was vacated"); see id., Ex. 11 (ECF No. 2-2 at 50) (September 18, 2025 expedited removal order pursuant to Section 235(b)(1)); see also Pet'r Mot. at 5. Under immigration law, there are two different proceedings for removing noncitizens: Section 240 removal proceedings pursuant to 8 U.S.C § 1229a or expedited removal proceedings pursuant to 8 U.S.C § 1225(b)(1) (INA Section 235(b)(1)). Therefore, petitioner is not currently being detained pursuant to the expedited removal order.[4]

The Court next turns to respondents' § 1225(b)(2) argument. Respondents argue § 1225(b)(2) applies because petitioner is an applicant for admission who is not clearly entitled to admission. Resp't Opp'n at 6. Separate from the issues above, the Court finds that § 1226 applies to petitioner, not § 1225(b)(2) as the government argues. This is because immigration authorities released petitioner on her own recognizance pursuant to § 1226 (also known as section 236 of the INA) on April 8, 2022, as expressly provided in the Order of Release on Recognizance issued by DHS. Resp't Supp. Opp'n, Ex. A (ECF No. 16 at 6) (issued "[i]n accordance with

---

[4] The Court further notes that it is unclear whether petitioner was validly placed in expedited removal proceedings on September 18, 2025, given the limitations on which noncitizens may be placed in expedited removal. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding from application aliens who have been admitted or paroled into the United States, or who have been physically present in the United States continuously for two years before).

section 236 of the INA"). Section 236 of the INA is codified at 8 U.S.C. § 1226; section 235 of the INA is codified at 8 U.S.C. § 1225.

This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' interpretation of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of

8

prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9. As the district court found in Lepe, this Court rejects the government's contention that petitioner is an "applicant for admission" subject to § 1225(b)(2) (Resp't Opp'n at 6), and finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this country for over 3.5 years since February 2022, petitioner was released on her own recognizance in April 2022 pursuant to § 1226, and petitioner's September 10, 2025 arrest and detention was not upon her arrival to the United States. Therefore, petitioner is likely to succeed on the merits of her claims that she was wrongfully detained without a bond hearing under section 8 U.S.C. § 1226(a).

*2. Due Process*

Petitioner argues she has a fundamental liberty interest in freedom from imprisonment and in a bond hearing. Pet'r Mot. at 8 (quoting Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (internal quotation marks and citation omitted)). Respondents' asserted compliance with the statutes does not demonstrate they have satisfied the requirements of the Due Process Clause, "which of course constitute the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing

9

Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

"The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, her "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." Id. at 481-84.

Here, immigration officials initially paroled petitioner into the United States upon her entry in February 2022 and then released her on her own recognizance in April 2022 pursuant to

///

§ 1226.[5]  "The regulations that authorize immigration authorities to release a noncitizen require that the noncitizen 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons' and that the noncitizen is 'likely to appear for any future proceeding.'  8 C.F.R. § 1236.1(c)(8).  'Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'  Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018)."  F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In addition, like Morrissey, petitioner's release allowed her to live in California outside of custody for over 3.5 years while subject to release conditions.  Such time allowed plaintiff to form "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  This conditional release allowed petitioner to begin classes, get a part-time job, volunteer with nonprofit organizations, live with and emotionally support her mother, attend church and build friendships in the community.  This Court finds that petitioner's prior release and years out of custody gave rise to a constitutionally protected liberty interest, and respondents' argument that § 1225(b)(2)(A) applies is not supported as described above.  See, e.g., W.V.S.M. v. Wofford, 2025 WL 3236521, at *4 (E.D. Cal. Nov. 19, 2025).  Moreover, "the government previously represented to petitioner that her release was pursuant to 8 U.S.C. § 1226(a)."  F.M.V., 2025 WL 3083934 at *4.

Therefore, this Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226 created a reasonable expectation that she would be entitled to retain her liberty as long as she was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate

---

[5]  In the immigration context, parole and § 1226 release are different procedures.  See J.S.H.M v. Wofford, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025).  Because petitioner's release order in effect before she was detained on September 10, 2025 was her release pursuant to § 1226, see Resp't Supp. Opp'n, Ex. A at 1, the Court therefore focuses its review on petitioner's § 1226 release, rather than her prior parole status.  Even so, "[t]o be released on conditional parole, there must be a finding that the immigrant does not pose a risk of flight or danger to the community."  J.S.H.M., 2025 WL 2938808, at *6 (citing Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007)).

claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4. This Court concludes that petitioner has a protected liberty interest in her release. See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over three years and almost seven months, petitioner was free from custody before her re-detention. She was taking GED and English classes at a City College of San Francisco, and later took classes to become certified as an Early Childcare Assistant. Pet'r TRO Mot. at 4-5. Petitioner also did volunteer work for a number of nonprofit organizations, such as Instituto

Familia de la Raza and the Mission Action food distribution program, and has been accepted into the Wu Yee's Children's Services IRISE internship program. Id. Petitioner attended church with her mother. Id. Through all these activities, petitioner made many friends and connections to the community. See id. Petitioner also worked part-time at a San Francisco restaurant to help with household expenses. Id. Petitioner submitted multiple letters in support of her character. Jaime Decl., Exs. 7-10 (ECF No. 2-2 at 37-48).

Petitioner has no criminal record, which respondents do not dispute. Respondents point to no violation of petitioner's release conditions. Indeed, she has reported to ICE faithfully as required. Resp't Supp. Opp'n, Ex. A at 2 (ECF No. 16 at 6). The duration of her conditional release demonstrates petitioner has a considerable interest in her continued liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Next, the Court turns to the second Mathews factor, the risk of erroneous deprivation to petitioner, and finds this factor weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). That petitioner reported to ICE at least six times over the 3.5 years she was on release demonstrates she is not a flight risk. See Resp't Supp. Opp'n, Ex. A at 2 (ECF No. 16 at 6). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. Even if respondents believed they had a proper reason to detain petitioner, such decision on their part would warrant a pre-detention hearing rather than automatic detention.

"That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

Here, petitioner has been detained since September 10, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community. Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose. See Zadvyadas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence ("DUI")); Nolasco-Gomez v. Noem, 2025 WL 3514758, at *1 n.1, 2 (D. Nev. Dec. 8, 2025) (granting preliminary injunction, requiring a bond hearing under § 1226(a) by Dec. 12, 2025, enjoining the government from denying release on bond based on § 1225(b)(2), and if bond is granted, ordering petitioner's immediate release, despite petitioner being arrested for DUI).

Finally, with regard to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on her own recognizance after immigration officials determined she was not a flight risk or danger to the community, she lived in the country for over 3.5 years on release, she has no criminal record, and she has regularly reported to ICE as required. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before she was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner has established a likelihood of success on the merits of her due process claims.

### B. Irreparable Harm

The second factor requires petitioner to demonstrate that she "is likely to suffer irreparable harm in the absence of preliminary relief." Winter, 555 U.S. at 20. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012); Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (Where a plaintiff alleges a constitutional violation and "shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation."). Here, in addition to the deprivation of her physical freedom, petitioner is at risk of medical and mental health issues. Petitioner provided evidence that she suffers from major depressive disorder, and unspecified anxiety. Jaime Decl., Ex. 14 (ECF No. 2-2 at 108-10). "[T]he subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention" are "concrete" examples of "irreparable harm" sustained during civil detention. Hernandez, 872 F.3d at 995; see also

Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1192 (N.D. Cal.), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015) ("Emotional distress, anxiety, depression, and other psychological problems can constitute irreparable injury.") (citations omitted).  Further, petitioner's re-detention imposes an economic and other burdens because petitioner is unable to continue her education, her part-time job to help support the household, and separates petitioner from her mother, who suffers depression-like symptoms due to petitioner's detention, and petitioner's friends.  Pet'r TRO Mot. at 5-6.  Respondents do not dispute petitioner's claims that she will be irreparably injured by this re-detention.  "As other courts that have faced this issue have explained, the violation of petitioner's statutory rights causes 'immediate and irreparable injury.'" Lepe, 2025 WL 2716910, at *9 (citations omitted).

### C. Balance of Hardships and Public Interest

Finally, the Court turns to the last two Winter factors, which merge when the government is the nonmoving party.  Nken v. Holder, 556 U.S. 418, 435 (2009); Baird, 81 F.4th at 1040 (internal citations omitted).  Petitioner argues that the balance of hardships weighs in favor of injunctive relief because she "faces weighty hardships" and "[a]voiding such 'preventable human suffering' strongly tips the balance in favor of Petitioner."  Pet'r Mot. at 14 (quoting Hernandez, 872 F.3d at 996).  Though the government has an interest in enforcing immigration laws, the issue here is whether the government can re-detain the petitioner without a bond hearing over 3.5 years after the government released the petitioner on her own recognizance.  This Court agrees with petitioner.  Petitioner faces a loss of liberty, an inability to work, separation from her mother and friends, as well as the anxiety and likely aggravation of her major depressive disorder petitioner will incur during detention.

On the other hand, respondents face no hardship because respondents must release a person the government previously released and who has since lawfully resided in the United States for over 3.5 years.  Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. I.N.S., 753 F.2d 719, 727 (9th Cir. 1983); see also Rodriguez v. Robbins, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful

practice[.]"). Further, the public has a strong interest in requiring respondents to follow the law and comply with due process. In addition, as recognized by the Ninth Circuit, "costs to the public of immigration detention are staggering[.]" Hernandez, 872 F.3d at 995; see also Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). Thus, the Court finds that the balance of hardships and the public interest weigh in favor of granting petitioner injunctive relief.

### D. Remedy

This Court finds the requirements for issuing a preliminary injunction are met. As stated in Lepe, "[t]he purpose of a preliminary injunction is to return the parties to the status quo ante, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" Lepe, 2025 WL 2716910 at *10 (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Petitioner's immediate release is required to return her to the status quo before the pending controversy. Respondents are ordered to release petitioner immediately. If the government seeks to re-detain petitioner in the future, the government must prove that petitioner is a flight risk or danger to the community at a bond hearing before a neutral arbiter.

## V. BOND

The Court exercises its discretion under Federal Rule of Civil Procedure 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003); see Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011). Therefore, no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts regularly waive security in cases like this one. See, e.g., Zakzouk v. Becerra, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

## VI. CONCLUSION AND ORDERS

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order, which is converted to a motion for

    preliminary injunction (ECF No. 2), is granted.

2. Petitioner Reyna Judith Suarez Otero shall be released immediately from respondents' custody.

3. Respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

5. Within seven days of this order, the parties are ordered to file a Joint Status Report as to petitioner's status, and whether a briefing schedule needs to be set to address the petition on the merits.

Dated:  December 22, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/oter1790.tro