UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNA JUDITH SUAREZ OTERO,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, et al.,<br><br>Respondents. | No. 1:25-cv-1790 CSK<br><br><br><br>ORDER |

Petitioner, an asylum seeker from Nicaragua who entered the United States on February 14, 2022, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241.[1] Petitioner was initially detained by immigration officials and released on parole on February 14, 2022. Subsequently, Petitioner was released on her own recognizance on April 8, 2022 pursuant to 8 U.S.C. § 1226. Petitioner lived in the United States for over 3.5 years until September 10, 2025, when petitioner reported to U.S. Immigration and Customs Enforcement ("ICE") in San Francisco for her required check-in and was detained. This habeas action concerns petitioner's re-detention. On December 22, 2025, the Court granted petitioner's motion for preliminary injunction and ordered petitioner released, and petitioner was released. (ECF Nos. 17, 18.) The parties subsequently filed a joint status report informing the Court that additional briefing was not

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 9.)

needed to decide the petition on the merits. (ECF No. 18.) For the reasons that follow, the Court GRANTS the habeas petition.

## I. BACKGROUND

The factual and procedural background previously presented in the Court's December 22, 2025 order are incorporated herein. (See ECF No. 17.) This section focuses on providing updates since the December 22, 2025 order. After the Court's December 22, 2025 order, petitioner was released from ICE custody. (ECF No. 18.) On December 29, 2025, the parties filed a joint status report informing the Court that additional briefing was not needed to decide the petition on the merits and that the parties would inform the Court if any material change in circumstances occurred. (ECF No. 18.) The parties have not informed the Court of any material change in circumstances. (See Docket.)

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). The petition raises two claims for violation of the Fifth Amendment procedural due process clause. (ECF No. 1 at 11-13.) Petitioner contends that respondents denied petitioner due process by denying her any notice and

hearing, before her arrest and re-detention, despite her release under 8 U.S.C. § 1226 (also referred to as INA § 236), and by choosing to revoke petitioner's parole in an arbitrary manner, without a rational and individualized determination of whether petitioner was a safety or flight risk.  Pet. at 11-13 (ECF No. 1); Pet'r Mot. at 2-3 (ECF No. 2).  Respondents do not argue that petitioner is a flight risk or a danger to the community, or that she violated any condition of her release.  See generally Resp't Opp'n (ECF No. 11).  Instead, they argue that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A) because petitioner is an applicant for admission. Resp't Opp'n at 6 ("In sum, Petitioner's detention is proper under § 1225(b)(2)(A)).  Respondents separately argue that petitioner is currently being detained pursuant to § 1225(b)(1) based on the September 18, 2025 expedited removal order.  Resp't Opp'n at 5 (citing September 18, 2025 expedited removal order).

### A.     Applicability of 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)

The first issue here is whether petitioner, who has no criminal record, attends school, has a part-time job, volunteers at nonprofit organizations, and has lived in the United States since February 2022, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether, petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.

The Court concludes that § 1226(a) applies to petitioner.  There are multiple problems with Respondents' arguments.  The Court first addresses respondents' argument that petitioner is currently being detained pursuant to 8 U.S.C. § 1225(b)(1) based on the September 18, 2025 expedited removal order issued pursuant to § 1225(b)(1), which is Section 235(b)(1) of the INA. Resp't Opp'n at 5 (citing September 18, 2025 expedited removal order at ECF No. 2-2 at 50). This is incorrect based on the government's own actions and documents.  On October 21, 2025, the government vacated the September 18, 2025 Order of Expedited Removal, placing petitioner in standard removal proceedings under Section 240 of the INA.  Jaime Decl., Ex. 13 (ECF No. 2-2 at 104) ("Section 235(b)(1) order was vacated"); see id., Ex. 11 (ECF No. 2-2 at 50) (September 18, 2025 expedited removal order pursuant to Section 235(b)(1)); see also Pet'r Mot. at 5.  Under immigration law, there are two different proceedings for removing noncitizens:  standard removal

proceedings pursuant to 8 U.S.C § 1229a (INA Section 240) -or- expedited removal proceedings pursuant to 8 U.S.C § 1225(b)(1) (INA Section 235(b)(1)).  Therefore, petitioner is not currently being detained pursuant to the expedited removal order.[2]

The Court next turns to respondents' § 1225(b)(2) argument.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).   Under Section 1226(a), the Government has broad discretion whether to release or detain the individual.  See id.  Section 1226(a) provides several layers of review for an initial custody determination and it confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202.  Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  Resp't Opp'n at 6.

Separate from the issues above, the Court concludes that § 1226 applies to petitioner.  First, immigration authorities released petitioner on her own recognizance pursuant to 8 U.S.C. § 1226 (also known as section 236 of the INA) on April 8, 2022.  The Order of Release on Recognizance issued by DHS to petitioner was expressly issued "[i]n accordance with section 236 of the INA."  Resp't Supp. Opp'n, Ex. A (ECF No. 16 at 6).  Section 236 of the INA is codified at 8 U.S.C. § 1226; section 235 of the INA is codified at 8 U.S.C. § 1225.

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[3] of Sections 1225 and

---

[2]  The Court further notes that it is unclear whether petitioner was validly placed in expedited removal proceedings on September 18, 2025, given the limitations on which noncitizens may be placed in expedited removal.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding from application aliens who have been admitted or paroled into the United States, or who have been physically present in the United States continuously for two years before).

[3]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

4

1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Since the parties submitted their joint status report, the Fifth Circuit decided Buenrostro-Mendez v. Bondi, 2026 WL 323330 (5th Cir. Feb. 6, 2026). In Buenrostro-Mendez, the Fifth Circuit recently agreed with respondents' interpretation of § 1225(b)(2). This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted. See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)). Respondents cite to the Buenrostro-Mendez decision. Doc. 9 at 1. The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case.

Gurvinder Singh, 2026 WL 413839, at *1 n.1. This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above. See id.; see also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D.W. Va. Feb. 9, 2026) (same). In addition, as in Gurvinder Singh, petitioner raises due process claims, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) by respondents, and finds that petitioner was re-detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this country for over 3.5 years since February 2022 until her re-detention, petitioner was released on her own recognizance in April 2022 pursuant to § 1226, and petitioner's

September 10, 2025 arrest and re-detention was not upon her arrival to the United States. As such, petitioner should have been provided a bond hearing before her re-detention.

**B.     Due Process Claims (Counts Three and Five)**

Petitioner argues she has a fundamental liberty interest in freedom from imprisonment and in a bond hearing. Pet. At 12-13; Pet'r Mot. at 8 (quoting Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (internal quotation marks and citation omitted)). Respondents' asserted compliance with § 1225(b)(2)(A) does not demonstrate they have satisfied the requirements of the Due Process Clause, "which of course constitute the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d

864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release on her own recognizance pursuant to § 1226(a) in April 2022 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for almost 3.5 years before she was re-detained in September 2025.[4] Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. This conditional release allowed petitioner to begin classes, get a part-time job, volunteer with nonprofit organizations, live with and emotionally support her mother, attend church and build friendships in the community. This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest. Moreover, "the government previously represented to petitioner that her release was pursuant to 8 U.S.C. § 1226(a)." F.M.V., 2025 WL 3083934 at *4.

Petitioner's release pursuant to 8 U.S.C. § 1226(a) was premised upon a finding that, at the time of petitioner's release, she was not dangerous nor a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's

---

[4] Because petitioner's April 2022 release order pursuant to § 1226 was in effect before she was detained on September 10, 2025, see Resp't Supp. Opp'n, Ex. A at 1, the Court focuses its review on petitioner's § 1226 release, rather than her prior parole status. Even so, "[t]o be released on conditional parole, there must be a finding that the immigrant does not pose a risk of flight or danger to the community." J.S.H.M., 2025 WL 2938808, at *6 (citing Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007)).

8

discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the forgoing, the Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that she would be entitled to retain her liberty as long as she was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4.  This Court concludes that petitioner has a protected liberty interest in her release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 3.5 years, petitioner was free from custody before her re-detention. She was taking GED and English classes at a City College of San Francisco, and later took classes to become certified as an Early Childcare Assistant. Pet'r TRO Mot. at 4-5. Petitioner also did volunteer work for a number of nonprofit organizations, such as Instituto Familia de la Raza and the Mission Action food distribution program, and has been accepted into the Wu Yee's Children's Services IRISE internship program. Id. Petitioner attended church with her mother. Id. Petitioner also worked part-time at a San Francisco restaurant to help with household expenses. Id. Through all these activities, petitioner made many friends and connections to the community. See id. The duration of petitioner's conditional release elevates and underscores her interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk

or a danger to the community.  (See generally ECF No. 11.)  Petitioner has no criminal record, which respondents do not dispute.  Respondents point to no violation of petitioner's release conditions.  Indeed, she has reported to ICE faithfully as required.  Resp't Supp. Opp'n, Ex. A at 2 (ECF No. 16 at 6).

Here, petitioner was detained on September 10, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community.  Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose.  See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released on her own recognizance pursuant to § 1226 after immigration officials determined she was not a flight risk or danger to the community, she lived in the country for over 3.5 years on release, she has no criminal record, and she has regularly reported to ICE as required.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before she was detained.  "An essential principle of due process is that a deprivation of

life, liberty, or property be <u>preceded</u> by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." <u>F.M.V.</u>, 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." <u>Guillermo M. R. v. Kaiser</u>, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on her due process claims.

**IV.     CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.
2. Respondents are enjoined and restrained from re-detaining petitioner Reyna Judith Suarez Otero unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.
3. The Clerk of the Court is directed to enter judgment in favor of petitioner and close this case.

Dated: March 3, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/oter1790.25.order.merits/1